UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| LOU REYNOLD DAVIS,<br><br>Plaintiff,<br><br>vs.<br><br>INFLECTION RISK SOLUTIONS, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff, Lou Reynold Davis ("Plaintiff" or "Mr. Davis"), by and through the undersigned counsel, hereby brings this Complaint and Demand for Jury Trial ("Complaint") against Defendant Inflection Risk Solutions, Inc. ("Inflection" or "Defendant"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681 *et seq.*

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq*.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendant purposefully avails itself of the protections of Texas law by regularly transacting business within the state and directing business at the state. Therefore, personal jurisdiction is established.

## PARTIES

4. Plaintiff, Lou Reynold Davis, is a natural person who resides in Longview, Texas, within the boundaries of Gregg County.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. Defendant Inflection is a Nevada corporation doing business throughout the United States. Inflection's principal place of business is located at 555 Twin Dolphin Drive, Suite 630, Redwood City, California 94065. Inflection can be served through its Registered Agent, c/o Corporation Service Company DBA CSC - Lawyers Inc., located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

7. Among other things, Defendant sells consumer reports, often called background checks, tenant screening reports, employment purposed consumer reports, and credit reports, to third parties for their use in making decisions regarding consumers' eligibility for various opportunities.

8. Defendant is a "consumer reporting agency" as it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

9. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principles, trustees, sureties, subrogates, representatives, and insures.

## FACTUAL ALLEGATIONS

11. In or around May 2021, Plaintiff created an Account with Airbnb, a popular platform through which consumers can "rent" or reserve other people's homes.

12. Upon information and belief, when Plaintiff created an Airbnb Account, he authorized Airbnb to run a background check on him.

13. On or about May 8, 2021, Plaintiff booked an Airbnb property in Galveston, Texas for June 11-13, 2021.

14. Approximately one month after he booked the property, on or about June 5, 2021, Plaintiff received an email from Airbnb that indicated his Account had been deactivated.

15. The email stated that Airbnb had decided to deactivate Plaintiff's Account based on the criminal records contained in a consumer report provided by Inflection.

16. Plaintiff was confused by Airbnb's decision to deactivate his account, as he knew he had not been convicted of any crimes.

17. Moments later, Plaintiff received another email from Airbnb that stated his upcoming reservation for the property in Galveston, Texas had been cancelled.

18. At the time, Plaintiff was extremely frustrated.

19. Plaintiff had planned this trip with a friend, and they intentionally booked the Airbnb more than a month in advance because their trip was during the "busy" season, and Plaintiff was still recovering financially from losing his job during the Covid-19 Pandemic.

20. When Plaintiff booked the Airbnb, it was the most affordable option for accommodations that he could find in Galveston, Texas for the weekend of their trip.

21. Plaintiff was particularly excited about the Airbnb because it was located within walking distance of the beach.

22. When Plaintiff's Airbnb Account was deactivated, his excitement for the vacation was severely diminished.

23.     Then, Plaintiff realized that the "refund" for the cancelled reservation was going directly back to the credit card he used to book the Airbnb.

24.     While this normally may not have been an issue, it created significant stress and embarrassment for Plaintiff, who did not have the cash available to reimburse his friend for his half of the cancelled Airbnb reservation.

25.     Despite the unfortunate circumstances and last-minute Airbnb cancellation, Plaintiff's friend was still interested in going on the trip.

26.     Although the options were slim, Plaintiff's friend was able to find a hotel with availability in Galveston, Texas. However, the hotel room was significantly more expensive than the Airbnb that Plaintiff had originally booked. The hotel room was also smaller than the Airbnb and nearly an hour-long drive to the beach.

27.     Plaintiff did ultimately go on the trip, but it created financial hardship that he would have not experienced in the absence of the Airbnb cancellation caused by Inflection's inaccurate reporting.

28.     Naturally, Plaintiff was upset with Airbnb for cancelling his reservation last minute. After returning from his vacation, he did not have an interest in using the Airbnb platform again.

29.     However, after a few months passed, Plaintiff grew curious about his Airbnb deactivation.

30.     He did not understand how a misdemeanor with a deferred adjudication could have possibly made him ineligible for the Airbnb platform.

## Case No. 47377-B

31.     On or about December 19, 2017, Plaintiff was charged with **one** count of "Injury Child/Elderly/Disable W/Int Bodily Inj" (Third Degree Felony) and **one** count of "Assault Causes Bodily Injury Family Violence" (Class A Misdemeanor).

32.     On May 22, 2019, Plaintiff pleaded "not guilty" to the felony charge.

33.     On May 28, 2019, the Court acquitted Plaintiff of the felony charge.

34.     On or about September 23, 2019, Plaintiff entered into a plea agreement to resolve the only remaining charge, misdemeanor "Assault Causes Bodily Injury Family Violence."

35.     As part of the agreement, Plaintiff pleaded guilty to the misdemeanor.

36.     In exchange, the Court deferred the adjudication of Plaintiff's guilt and sentenced him to two years of Community Supervision and 96 hours of community service.

37.     Plaintiff satisfied all the terms of his plea agreement on or about October 13, 2021.

38.     Thereafter, the Court dismissed the misdemeanor charge and closed Case No. 47377-B in accordance with Tex. Code Crim. P. Art. 42A.111.

39.     Accordingly, Plaintiff was not *convicted* of any crime associated with Case No. 47377-B.

## Inflection's Reporting of Case No. 47377-B

40.     Sometime in or around March 2022, Plaintiff requested a copy of his consumer report from Inflection.

41.     On or about March 25, 2022, Plaintiff received a copy of the background report Inflection provided to Airbnb in June 2021.

42. Upon review, Plaintiff learned that the background report Inflection provided to Airbnb in June 2021 included patently inaccurate and materially misleading information about his criminal history.

43. The report Inflection provided to Airbnb included what appeared to be four separate criminal records.

44. This alone alarmed Plaintiff, as he knew he had not been a party to four separate criminal cases.

45. Upon closer review, Plaintiff learned that all four, separate "criminal records" on his Inflection report were associated with a single criminal case, Case No. 47377-B.

46. Upon information and belief, each of the four criminal records reported by Inflection came from different sources and included different details about the alleged crimes.

47. However, each of the criminal records included an "offense date" or "record date" of December 19, 2017.

48. Inflection attributed the first criminal record in Plaintiff's consumer report to "Court Name: TX Gregg County Arrest."

49. In the first criminal record, Inflection listed one charge of "Injury Child/Elderly/Disabled Reckless Bodily Inj," with "record" and "file" dates of December 19, 2017.

50. According to Inflection, the first criminal record had an "unknown" offense level and an "unknown" disposition type.

51. Inflection attributed the second criminal record in Plaintiff's consumer report to "Court Name: TX Gregg Courts."

52. In the second criminal record, Inflection listed another charge of "Injury Child/Elderly/Disable w/Int Bodily Inj," allegedly filed in Gregg County, Texas on February 22, 2018.

53. The second criminal record was listed with a disposition of "Order Modify Probation Condition" and a disposition date of February 17, 2020.

54. Inflection attributed the third criminal record in Plaintiff's consumer report to "Court Name: 124th District Court Longview."

55. The third criminal record on Plaintiff's Inflection report listed an additional charge for "Inj Child/Elderly/Disabled w/int Bodily Inj." However, this entry indicated the charge was a third-degree felony, with a disposition of "deferred," and a disposition date of September 23, 2019.

56. Inflection attributed the fourth criminal record on Plaintiff's Inflection report to the Texas Department of Corrections (Probation).

57. In the fourth criminal record, Inflection listed a charge for "Assault Causes Bodily Injury Family Member" with an "unknown" offense level, an "unknown" disposition type, and a "sentence date" of September 23, 2019.

58. Inflection's reporting of Plaintiff's criminal history was patently inaccurate and materially misleading.

59. In Case No. 47377-B, Plaintiff was originally charged with two counts: one third-degree felony for "Injury Child/Elderly/Disable w/Int Bodily Inj" and one Class A misdemeanor for "Assault Causes Bodily Injury Family Violence."

60. Plaintiff was acquitted of the felony charge on or about May 28, 2019.

61. It was inaccurate and materially misleading for Defendant to report a single felony charge in three separate criminal record entries, each with different details about the alleged crime.

62. Defendant's repetitive reporting makes it appear as though Plaintiff was charged with three separate felony counts of "Injury Child/Elderly/Disable W/Int Bodily Inj," when he was only ever charged with one.

63. It was patently inaccurate to report the felony charge as "deferred." Plaintiff pleaded "not guilty" to the felony charge on May 22, 2019, and he was acquitted of the alleged crime on or about May 28, 2019.

64. On September 23, 2019, Plaintiff pleaded guilty to the misdemeanor charge.

65. On that same day, the Court updated the misdemeanor charge's disposition to "adjudication deferred."

66. Therefore, it was patently inaccurate for Inflection – in the summer of 2021 – to report the misdemeanor charge with an "unknown" disposition type and an "unknown" offense level.

67. If Inflection's reporting of the misdemeanor charge was not patently inaccurate, it was certainly incomplete and materially misleading. The information that Inflection indicated was "unknown" was readily available in the public records.

68. Had Inflection conducted even a cursory review of the public records before providing Plaintiff's consumer report to Airbnb, it would have had the information necessary to correctly report Plaintiff's criminal history.

69. Upon information and belief, Inflection's inaccurate, incomplete, and/or materially misleading reporting of Plaintiff's criminal history caused Airbnb to deactivate Plaintiff's account.

70. Upon information and belief, had Inflection accurately reported the charges and dispositions associated with Case No. 47377-B, Plaintiff's Airbnb account would not have been deactivated.

71. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the information it includes in the consumer reports it sells to third parties.

72. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own background reports.

73. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

74. Defendant is aware that criminal information is often updated or changed after its initial appearance in the public record.

75. Defendant is also aware that criminal information provided by third-party vendors is often inaccurate or incomplete.

76. Upon information and belief, Defendant does not maintain procedures intended to ensure that the criminal records in its consumer reports match the information available in the public records.

77. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

78. Upon information and belief, Defendant fails to exercise due diligence in ensuring it contracts with reliable third-party vendors.

79. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

80. Upon information and belief, Defendant has been sued under the FCRA by consumers in the past for reporting criminal records in an inaccurate, incomplete, and/or materially misleading way.

81. Therefore, the Defendant has actual notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate, materially misleading, and/or incomplete consumer information.

82. Despite knowing that its procedures are unreasonable, Defendant recklessly and knowingly fails to employ procedures that assure only maximally accurate consumer information is compiled and published in its consumer reports.

83. Upon information and belief, Defendant does not maintain reasonable procedures to assure that it is accurately reporting consumers' criminal records.

84. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because employing reasonable procedures would reduce its profits.

85. For example, and without limitation, Defendant's unreasonable procedures allowed it to report case number 47377-B in a way that directly contradicts public records.

86. For example, and without limitation, Defendant's unreasonable procedures allowed it to report case number 47377-B in a way that made it appear as though Plaintiff was a convicted of a crime he was not.

87. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate and/or materially misleading consumer reporting with grave consequences.

88. Upon information and belief, Defendant does not independently investigate the information it buys from third-party vendors before including it in consumers' background reports.

89. Instead, Defendant has unreasonably decided that it is entitled to blindly rely on third-party vendors to ensure the information included in its consumer reports is accurate.

90. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

91. Upon information and belief, Defendant knows that its consumer reports are used to make significant consumer decisions.

92. Specifically, Defendant knows that its consumer reports (and the information therein) are often adopted by Airbnb and can result in account termination.

93. Upon information and belief, had Defendant accurately reported Plaintiff's criminal history, he would not have lost access to the Airbnb platform.

94. Upon information and belief, had Plaintiff's Airbnb Account not been deactivated, Plaintiff's trip to Galveston, Texas would have gone as planned.

95. Inflection's inaccurate, incomplete, and materially misleading reporting of Plaintiff's criminal history caused Plaintiff to suffer actual damages in the form of emotional distress, embarrassment, frustration, lost opportunity, sleeplessness, and unnecessary financial strain, as detailed herein.

96. As a direct result of Defendant's conduct, Plaintiff suffers from ongoing stress, frustration, and anxiety. Plaintiff continues to worry that Defendant's inaccurate reporting will reappear whenever he consents to a new background check.

97. Defendant's actions and inaction were willful. Accordingly, Defendant is liable to Plaintiff for statutory, actual, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n. Defendant is also liable for Plaintiff's reasonable attorney's fees and costs. *Id.*

98. Alternatively, Defendant's actions and inaction were negligent. Accordingly, Defendant is liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o. Defendant is also liable for Plaintiff's reasonable attorney's fees and costs. *Id.*

## COUNT I
### *Inflection's Violations of 15 U.S.C. § 1681e(b)*

99. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681(a)(d).

101. In the parlance of the FCRA, background reports for short-term rentals are "consumer reports."

102. The FCRA provides a number of protections for applicants who are subject to consumer reports ("background reports").

103. The FCRA imposes duties on consumer reporting agencies, like Inflection, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

104. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

105. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports.

106. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports.

107. Defendant's unreasonable and deficient procedures allowed it to report Plaintiff's criminal history in an inaccurate and/or materially misleading way.

108. Defendant's failure to employ and/or follow reasonable procedures while preparing and distributing Plaintiff's information caused Plaintiff to suffer statutory and actual damages, as described herein.

109. Defendant's violations of 15 U.S.C. § 1681e(b) were willful and knowing.

110. Further, Defendant's violations of 15 U.S.C. § 1681e(b) were committed in reckless disregard of Plaintiff's rights as a consumer.

111. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

112. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent, rendering it liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

113. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

114. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Lou Reynold Davis, respectfully requests judgment be entered against Defendant, for the following:

    A.    Actual damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

    B.    Statutory damages pursuant to 15 U.S.C. §§ 1681n and/or1681o;

    C.       Punitive damages pursuant to 15 U.S.C. § 1681n;

    D.       Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

    E.       Any pre-judgment and post-judgment interest as may be allowed under the law; and

    F.       For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 5th day of August 2022.

*/s/ Kendra Penningroth*
Kendra Penningroth
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1447
E: kpenningroth@cjl.law

*Attorney for Plaintiff*
Lou Reynold Davis